Riley *vs.* Johnston.

No. 33.—SPENCER RILEY, plaintiff in error, *vs.* ROBERT JOHNSTON, defendant in error.

[1.] When an injury to a person is effected by a *regular* process of a Court of competent jurisdiction, *case* is the remedy, and *trespass* is not sustainable, although the process may have been maliciously adopted.

[2.] If the process is *irregular*, then the remedy against the Magistrate issuing it is *trespass*. But the remedy against the person who procures, upon insufficient information, a process to issue to search the house of another, is *case*. And in an action for causing the warrant to issue, it is necessary that the plaintiff show the want of probable cause, and it is competent for the defendant to prove any fact or circumstance which will show the existence of probable cause, and which will rebut the presumption of malice.

[3.] An attorney is not a competent witness to testify for or against his client, as to any matter or thing, the knowledge of which he derived from his client, or acquired during the existence of the relation of client and attorney, in the suit in which he is engaged.

Trespass, in Bibb Superior Court. Tried before Judge POWERS. ——— Term, 1852.

The facts of this case are sufficiently embodied in the decision of the Court.

STUBBS & HILL, and RUTHERFORD, for plaintiff in error.

HARDEMAN, and POE, NISBET & POE, for defendant in error.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] I apprehend that most of the exceptions taken in this bill may be disposed of in the consideration of that one which is founded on the charge of the Court. The charge was, "that the search warrant issued by said Brown, Justice, was a valid and legal warrant, and the affidavit made for the procurement of the same by the defendant, was valid and sufficient, and it was for the plaintiff to satisfy the Jury by evidence that said warrant was sued out without reasonable or probable cause ; and if it was so sued out, then they must find for the plaintiff something. If otherwise, then they must find for the defendant." Whether the Court was right or not, in ruling that the affidavit and warrant were valid and sufficient, is immaterial; for whether they were valid or void upon their face, in either event, the rule laid down by the Court as to the necessity of the plaintiff below showing the want of probable cause, is the rule applicable to this case. The first count is plainly in case, and the others bear a mixed character of trespass and case. It was treated as an action on the case by the Court below, and so far as I can learn by the counsel also ; for the record furnishes no evidence that any point was made before the Court involving the character of the action. The Court made no decision on its character, and we are not called upon to make any. It is true that the counsel have made here such a question, (as we shall see,) but we treat the action as we find it was considered below—that is, as an action in case for the recovery of damages for maliciously and without probable cause, causing a search warrant to issue against the plaintiff. The argument of counsel for the plaintiff in error, is that his action is trespass, and being so, the ruling of the Court requiring the plaintiff below to prove probable cause, was erroneous- In an action of trespass for causing a search warrant to issue upon an insufficient affidavit, say the counsel, the plaintiff is not bound to show the absence of probable cause, and the defendant cannot defend by proof of probable cause and the absence of malice. Hence they find it necessary to

controvert the ruling of the Court that the affidavit and warrant were sufficient, and taking that to be error, and assuming that their action is trespass, they are in position to assail the decision of the Court that plaintiff below must prove the absence of probable cause. Now, as before stated, we are bound to consider this action as in case; for the questions made for our review, seem to have grown out of a concession on all hands on the trial, that it was case. We know nothing of the cause, except what we learn through the record. The legal truth, however, of the whole matter is, that if the Court was right in holding this to be a regular process, then case was the proper remedy, and his farther ruling that want of probable cause must be shown, was right. The rule is, that when an injury to a person is effected by regular process of a Court of competent jurisdiction, case is the proper remedy, and trespass is not sustainable, although the process may have been maliciously adopted. *Belk vs. Broadbent et ux.* 3 *T. R.* 185. *Boot vs. Cooper,* 1 *T. R.* 535. *Cooper et al. vs. Booths,* 3 *Esp. R.* 135. *Waltern vs. Freeman,* Hob. 266. *Gofford vs. Woodgate,* 11 *East.* 297 ; 1 *Camp.* 285 ; 1 *Chitty's Plead.* 136 ; 2 *Idem,* 291, *note M.*

[2.] If the proceedings complained of are irregular, then the remedy against the Magistrate issuing them, is trespass. *Morgan vs. Hughes,* 2 *T. R.* 225. 1 *Chitty's Plead.* 139, 140. But the remedy against the person who procures, upon insufficient information, a process to issue to search the house of another, is case. Whilst the remedy against the Magistrate in such a case is trespass, that against the informer is case. This question came up before the Court of *King's Bench,* in the case of *Elzee vs. Smith,* under a state of facts almost identical with the state of facts in this case. The plaintiff brought case against one who had upon an affidavit, caused a warrant to issue to search the house of the plaintiff. The defendant swore " that he had reason to suspect that several trees or parts of trees, had been stolen from the King's forest of Hainault, and that they were carried to the premises of John Smith, carpenter, of Chigwell Row, and were there

Riley vs. Johnston.

concealed." In error before the *King's Bench*, one of the assignments was " that the complaint alleged in the declaration, stated a mere suspicion of felony and not a positive oath of an actual felony committed, and therefore the Justice was not warranted in issuing the warrant mentioned in said declaration, and if not, then trespass was the proper form of action, if any was sustainable against the defendant." Upon the argument, it was insisted that the Magistrate had no authority to issue the warrant upon the complaint, because the complainant had not sworn positively that his trees had been stolen, and that he and also the complainant was liable only in trespass. The Court held that a positive oath that a felony has been committed, is not necessary to justify the Magistrate in granting his warrant to search the premises and apprehend the person of a party suspected of felony, and although it may be trespass in a Magistrate to issue an illegal warrant, yet it is case in the person who causes and procures such warrant to issue, if it is done maliciously or without reasonable or probable cause.

*Holroyd*, J. is reported to say, " if the warrant issued without due authority on the part of the Magistrate, that would be trespass in the Magistrate ; but it by no means follows that it is trespass in the party who, by laying the information before the Magistrate, is the cause or instrument on which the Magistrate acts in granting his warrant. He lays a statement before the Magistrate, of a suspicion of the goods being stolen, and that they were carried to the premises of the plaintiff, and there concealed, and he prays a search warrant to examine the plaintiff's premises. He does not, from anything that appears on the face of the declaration pray this specific remedy by warrant for the apprehension of the plaintiff. Now, if the declaration had stated that the defendant had gone before the Magistrate and prayed for a search warrant on a specific charge of felony, then there might be some color for arguing that the declaration ought to have been in trespass." 1 *Dowling and Ryland*, 97. 16 *Eng. C. L. R.* 19. In the case before us, the objection to the affi-

davit is that Mr. Johnston, the defendant in the suit, does not swear that the goods were stolen by Riley, the plaintiff. He only swears that he has reason to believe and does verily believe that Spencer Riley has in his possession the articles which he describes. He does not pray a warrant of any kind. The warrant issued was to search Riley's house, and if any of the articles were found, to bring them and Riley before the Magistrate to be dealt with according to law. The case of *Elzee and Smith*, goes farther than this, and states the complainant's suspicion that the goods had been stolen from the King's forest and concealed on the premises of the plaintiff. Here the charge against Riley, is that the defendant has reason to believe and does believe that the goods are in his possession. The defendant is farther from making a specific charge of a felony in this case than was the defendant in that. Which specific charge *Mr. J. Holroyd* intimates, might make him liable in trespass. In that a warrant to search was prayed; in this no warrant of any kind is prayed. The decision goes upon the ground that a Magistrate issuing a warrant illegally, does thereby do an injury to the person charged, immediately and directly. Whereas the injury done by the person who makes the complaint and causes the process to issue, is consequential upon his complaint. Upon principle and authority then, it seems to me that the defendant, Johnston, was liable only in case. If it be conceded that the process was illegal, the plaintiff can take nothing by that fact, because in that event Johnston would not be liable in trespass, but only in case. And in case he is sued. So in any event the ruling of the Court that plaintiff must show probable cause was right. In actions on the case for malicious prosecutions, it is not doubted but that plaintiff must show malice and want of probable cause, and that the defendant may protect himself by pleading and proving the absence of malice, and the existence of probable cause.

So much being settled, several exceptions to the evidence are easily disposed of. Whatever facts and circumstances which tend to sustain his defence of probable cause for making

Riley *vs.* Johnston.

the complaint upon which the warrant issued, the defendant was entitled to prove. To be yet more specific—whatever facts tended to show that he had probable cause to believe that the letter written by Mr. Crawford, or his professional card, or the receipt of his house given for the bonds, or either of these things, were in possession of Riley, were provable by the defendant. The defendant was a broker in the city of Philadelphia, and a man representing himself as Robert J. Williams, after for several days attempting elsewhere to raise money upon bonds of the State of Georgia, to the amount of $65,000, transferred them to the house of which he was a member, as security for an advance of $6,000. In the course of this negotiation, the business card of the house was handed to Robert J. Williams, also a receipt for the bonds hypothecated, and a letter which he had previously exhibited to them, purporting to be a letter of introduction from the Hon. J. Crawford, to Baring, Brothers & Co. London. This card, receipt and letter, are the articles for which the warrant was sued out. The bonds were soon ascertained to be forged. A bill of indictment was filed in the proper Court in the City of Philadelphia against Robert J. Williams for forgery, and a demand made for him by the Governor of the State of Pennsylvania upon Geo. W. Towns, Governor of the State of Georgia, and in this demand the defendant, Johnston, was appointed the agent of the State of Pennsylvania, to receive and take to that State him, the said Robert J. Williams. He repaired at once to Milledgeville, Geo. and delivered the demand to Gov. Towns. On account of various reasons which are detailed in the evidence of His Excellency Gov. Towns, suspicion fell at once upon the plaintiff, Riley, as being the man, who, under the name of Williams, had forged the bonds of the State, and transferred them to the house of R. Johnston & Co. Philadelphia. The Executive warrant was therefore issued for the arrest of Robert J. Williams *alias* Spencer Riley, and delivered to Col. Smith, one of the Secretaries of the Executive Department, with instructions to go with the defendant, Johnston, to Macon, the residence of Riley, and to

cause him to be arrested, if upon seeing him, Johnston would recognize him as the man who had negotiated the bonds in Philadelphia; with instructions farther, to take in behalf of the State, professional counsel. Upon seeing Riley, Johnston recognized him as Robert J. Williams; the counsel of an eminent lawyer was taken in Macon, who conferred with Col. Smith and Johnston, in relation to the arrest of Riley; the Executive warrant was handed to the officer, and he was arrested. The facts and circumstances which induced the Governor to believe that Riley was the man, and upon which he acted in inserting his name in the warrant, were all made known to Johnston at Milledgeville, but not until after the Executive warrant had issued.

Under all these circumstances, Johnston made the information upon which the search warrant for the papers before described, issued, and which gave rise to the case now under review. Now, it will be seen at a glance, that in showing probable cause, the first thing for the defendant to establish, was the identity of Riley with Williams, who had transferred the forged bonds to R. Johnston & Co. at Philadelphia. It was indeed, the fact upon which the defence rested, for the papers were delivered to a man calling himself Williams, and if Riley is identified as the man thus calling himself Williams, they were delivered to Riley, and proof of having delivered them to Riley, is a reasonable cause—a probable cause, for believing that they were still in his possession. To prove the identity, it was necessary to exhibit the transaction as it occurred in Philadelphia; the acts, sayings and appearance of the man Williams. To this end the testimony of Drexel, Cromlein and Moss, was rightly admitted.

To this end also, was correctly admitted, that part of the evidence of Governor Towns, and the testimony of Smith and Patton, which detailed facts and circumstances in relation to Riley, which seemed to connect him with the transaction in Philadelphia. The testimony of Nisbet was legal, to prove the bonds forged, and when proven not to be genuine, they also were admissible, as part and parcel of the illegal transac-

tion in the city of Philadelphia. The indictment—the demand of the Governor of Pennsylvania, in which the defendant was designated and duly constituted the agent of the State of Pennsylvania, were competent to shew with what view and to what end the defendant came to the State; to show that he came by authority of the Constitution and laws of the United States, in furtherance of public justice, and in obedience to an executive order of the Governor of Pennsylvania; and thus to remove any presumption of malice, raised by the fact of causing the search warrant to be issued. In short, the history of the forgery and the negotiation of the forged bonds, with all its attendant circumstances—all the facts and all the circumstances which served to identify Riley with the actor in Philadelphia—the proceedings against Williams in Philadelphia—the demand—the executive warrant of Gov. Towns, in which Riley himself is named under an *alias*, and the communications made to the defendant in Milledgeville, directing his attention to Riley, all legitimately, in our judgment, support the defence of probable cause; and I do not hesitate to say, make out a case upon which no man could for one moment have hesitated to act, through fear of damages for a malicious prosecution. The proof of identity is almost irresistible—the mind labors unavailingly to resist the conclusion that Riley was the very man who perpetrated the fraud in Philadelphia.

At the same time, it is but just to say, that by unimpeached and unimpeachable witnesses, it was proven that on the very day when the bonds were transferred to Johnston in Philadelphia, Riley was in Georgia. The case really presents one of those rare anomalies which seems to confound the wisdom of Judges, and deny the potency of general laws, to insure the attainment of justice. Whilst this case must be determined by those rules of the Common Law, which govern any other case of malicious prosecution in causing a search warrant to be issued, (for the causing of this warrant to issue was not a necessary part of the duty of the defendant as agent, to secure the arrest of Riley as a fugitive from the justice of the State of Pennsylvania,) yet inasmuch as it is in fact connect-

ed with a transaction which gave rise to a demand, under the Constitution and laws of the United States, of a fugitive from justice, we will not be laboriously astute to find reasons for sending it back. For among our strongest convictions, is that of the vital importance, both to public justice and to the permanency of the Union, of a prompt and strict fulfilment of all the obligations which the Constitution of the United States imposes upon the authorities of the States, in all cases where it provides for the delivery of fugitives. Prepared to give full effect to the Constitution and laws of the Union, whenever our functions are rightfully invoked, we will take care, that we afford no pretext for their violation elsewhere.

There are some exceptions to the evidence, which stand upon different grounds, and which I now proceed to notice. The testimony of Parker and Bloom was excepted to. They prove that some years ago, Riley was employed by them to grant reverted lands upon shares, and that a number of the grants taken out by him were pronounced spurious at the departments in Milledgeville. To these grants, the seal of the State, impressed on wax, was attached, which seal Col. Parker says was purloined. To the forged bonds, the seal of the State in wax, was also attached. This circumstance was calculated to show that Riley was the perpetrator of the fraud in Philadelphia, under the name of Williams, and on that account, the testimony in relation to the illegal grants was admissible.

[3.] The testimony of Mr. Stubbs, was clearly incompetent. He states that he had not been employed by Mr. Riley, at the time when he had the interview with Mr. Johnston, but that he expected to be if there should be a suit. Also, that he was acting as the professional adviser of Riley at the time, and was usually employed in his cases. The communication which he made to Mr. Johnston, was founded on facts derived from Riley. The Act of 1850, declares that it shall not be lawful for an attorney to testify for or against his client, in any case, as to any matter or thing, the knowledge of which he may have acquired from his client, or during the existence, and by reason of the relationship of client and attorney. Now,

although Mr. Stubbs was not at the time under a contract with Riley, as his attorney in the case which subsequently arose between Riley and Johnston, yet to all intents and purposes contemplated by the Act of 1850, the relation of client and attorney existed at the time when he acquired the knowledge of the matters about which he was called to testify. If so, in the case which afterwards occurred, it was not competent for him to be sworn as a witness as to those matters, for or against Riley. *Cobb's N. D.* 280. *Swift vs. Perry,* 12 *Geo. Rep.*

Let the judgment be affirmed.